UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BALLY GAMING, INC.,

    Plaintiff,

        v.

DAVID KAPPOS, et al.,

    Defendants.

Civil Action No. 10-1906 (JEB)

## MEMORANDUM OPINION AND ORDER

Defendants Betty Ringo and James Pearson, contending that this Court lacks personal jurisdiction over them, have moved to dismiss this patent infringement suit. Because the Court finds personal jurisdiction proper under 35 U.S.C. §§ 291 and 146, as well as under the Due Process Clause of the Fifth Amendment, their effort does not succeed.[1]

### I.    Factual Background

Plaintiff Bally Gaming, Inc. owns United States Patent 5,816,918 (the "Kelly '918 Patent"). Compl., ¶ 6 (Background). Defendants Ringo and Pearson own United States Patent 5,711,715 (the "Ringo '715 Patent"). Id., ¶¶ 3-4. Defendant David Kappos is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. Id., ¶ 2. This case arises from Plaintiff's efforts to secure a "confirmation of patentability of all pending claims" relating to the Kelly '918 Patent. Id., ¶ 21. More specifically, Plaintiff appeals from a decision of the United States Patent and Trademark Office's Board of Patent Appeals and Interferences affirming the USPTO's denial of Plaintiff's pending

---

[1] The Court has reviewed Defendants Ringo and Pearson's Motion to Dismiss, Bally's Opposition, and Defendants' Reply.

1

patent claims on the ground that "the Kelly '918 Patent interferes with and is anticipated or rendered obvious by" the Ringo '715 Patent. Id., ¶¶ 8-9 (Background), 14-15. Plaintiff contends that the "claimed invention of the Kelly '918 Patent was conceived prior to conception of the alleged invention of the Ringo '715 Patent," and that "Director [Kappos] erred in denying petitions to suspend the rules or to otherwise allow submission of evidence of prior invention by the inventors of the Kelly '918 Patent before invention of the Ringo '715 Patent." Id., ¶¶ 20, 16.

Plaintiff is a corporation organized under the laws of, and having its principal place of business in, Nevada. Id., ¶ 1. Defendant Ringo is a Texas resident. Id., ¶ 3; Mot. at 2. Defendant Pearson is a Florida resident who operates a small business in Tennessee. Compl., ¶ 4; Mot. at 2. Ringo and Pearson assert, and Plaintiff does not contest, that they have no contacts with the District of Columbia beyond the fact of their patent ownership. Mot. at 3.

Plaintiff filed its Complaint on November 5, 2010, seeking issuance of a reexamination certificate under 35 U.S.C. § 145 and review of agency action under 5 U.S.C. §§ 701-706, and alleging an interfering patents claim under 35 U.S.C. § 291. On April 12, 2011, Defendants Ringo and Pearson filed their Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2), which the Court now considers.

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(2), Plaintiff bears the burden of "establishing a factual basis for the [Court's] exercise of personal jurisdiction over the defendant." Crane v. New York Zoological Society, 894 F.2d 454, 456 (D.C. Cir. 1990) (citing Reuber v. United States, 750 F.2d 1039, 1052 (D.C. Cir. 1984), overruled on other grounds by Kauffman v. Anglo-American School of Sofia, 28 F.3d 1223 (D.C. Cir. 1994)). To meet this burden, Plaintiff "must allege specific facts connecting the defendant with the forum." Capital

Bank Int'l Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72, 74 (D.D.C. 2003) (citing Second Amendment Foundation v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001)). In determining whether a basis for personal jurisdiction exists, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." New York Zoological Society, 894 F.2d at 456 (citing Reuber, 750 F.2d at 1052).

**III.   Analysis**

Plaintiff asserts that personal jurisdiction over Ringo and Pearson is conferred on this Court by the nationwide-service-of-process provision of 35 U.S.C. § 146, as incorporated in 35 U.S.C. § 291, the statute under which Plaintiff brings its interference claim. Opp. at 3. Defendants Ringo and Pearson raise two arguments in denying that personal jurisdiction exists. First, they maintain that "Section 291's authorization of 'service' on U.S. citizens or nationwide service is incomplete and ambiguous at best." Reply at 4. In the alternative, they contend that, "notwithstanding the existence of a statutory basis for the exercise of jurisdiction over the defendants," id. at 2, to so find in the present case would violate their Fifth Amendment Due Process rights "[b]ecause [they] lack 'minimum contacts' [with the District of Columbia] and did not 'purposefully avail' themselves of the laws of the District of Columbia." Mot. at 6. The Court addresses each in turn.

   A.   35 U.S.C. § 146

Federal Rule of Civil Procedure 4(k)(1)(C) provides: "Serving a summons . . . establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." Title 35, section 291 of the U.S. Code gives the owner of an interfering patent a private cause of action against the owners of the first patent and explicitly addresses the question of jurisdiction by invoking the provisions of 35 U.S.C. § 146. Section 146 contains a nationwide-service-of-process provision

that, in certain specified circumstances, vests jurisdiction over patent interference claims in this Court:

> If there be adverse parties residing in a plurality of districts not embraced within the same state, or an adverse party residing in a foreign country, the United States District Court for the District of Columbia shall have jurisdiction and may issue summons against the adverse parties directed to the marshal of any district in which any adverse party resides.

As the plain language of the statute indicates, § 146 gives this Court jurisdiction over Defendants in this patent interference case.

Discussing 35 U.S.C. § 72a, the precursor to § 146, the U.S. Court of Appeals for the District of Columbia Circuit described the origin and purpose of the provision: "The purpose of the statute is to make possible the adjudication of all issues involved, between all adverse parties, in one proceeding and in one forum. The District of Columbia was selected by Congress as being the forum in which this fundamental objective of equity can best be achieved, when adverse parties reside in a plurality of districts not within the same state." Robinson v. Wayne, 136 F.2d 767, 769 (D.C. Cir. 1943) (upholding jurisdiction). In 1960, the D.C. Circuit considered the scope of § 146 and clarified that "adverse parties residing in a plurality of districts" refers to a plurality of <u>defendants</u> residing in different districts, rather than one plaintiff and one defendant residing in different districts. Hayes v. Livermont, 279 F.2d 818 (D.C. Cir. 1960).

Section 146 strikes an important balance by ensuring that, in cases involving defendants residing in different states, plaintiffs have a forum – *i.e.*, the District of Columbia – in which to seek relief; at the same time, defendants in patent cases are afforded the process they are due. As the D.C. Circuit has explained, "§ 146 permits claims that cannot be enforced elsewhere to be enforced here, and does not create an option of enforcing here claims that can be enforced

4

elsewhere." Chris Laganas Shoe Co. v. Watson, 221 F.2d 881, 882-83 (D.C. Cir. 1955). The defendants in that case included one private-party defendant, a New York corporation, and the Commissioner of Patents. Id. at 882. The D.C. Circuit held that, since the Commissioner was not a necessary party, jurisdiction was improper because were no defendants residing in different states. Id. at 882-83. The court reasoned: "'To hold that the plaintiff by making a mere formal party a codefendant can compel the real defendant, the real party in interest, to come from any part of the United States and defend his rights in the District of Columbia would conflict with the general purpose of Congress as appears from the fact that ordinarily suits in the federal courts must be brought in the district in which the defendant resides.'" Id. at 883 (quoting Coe v. Hobart Mfg. Co., 102 F.2d 270, 271 (D.C. Cir. 1939)).

More recently, two courts in this district have applied § 146 in resolving motions to dismiss for lack of personal jurisdiction in the way the D.C. Circuit envisioned. The plaintiffs in both cases relied solely on § 146 as the basis of the court's personal jurisdiction over the defendants, and the courts in each considered the purpose and scope of § 146 in deciding the motions to dismiss. In Shell Research Ltd. v. Matthewson, No. 89-0160, 1990 WL 198646 (D.D.C. Nov. 21, 1990), the court explained: "The purpose of the special jurisdictional provisions of 35 U.S.C. § 146 is to provide plaintiffs with a last resort in the District Court for the District of Columbia if they cannot otherwise join all necessary parties in another federal district court." Id. at *1 (citing Chris Laganas, 221 F.2d at 882). That case turned on a factual question relating to the identity and number of entities with legal rights or interests in the patent at issue. Id. The court found Coopers, Inc., a Delaware corporation, to be the only adverse party to the action for purposes of § 146. Id. at *2. Because there were not adverse parties residing in a plurality of states and the plaintiff's claim could properly be brought in the district of

5

Delaware, the court found "§ 146 does not empower this Court to assert personal jurisdiction over defendants" and dismissed the action.  Id.

In Eastman Kodak Co. v. Duracell Inc., 48 U.S.P.Q. 2d 1061 (D.D.C. 1998), the court found personal jurisdiction under § 146 in factual circumstances similar to the present case.  In that patent interference case, the plaintiff, a New Jersey company with its principal place of business in New York, challenged a decision of the Board of Patent Appeals and Interferences. Id. at 1062.  The case involved three private defendants: Strategic Electronics LLC, a Nevada LLC with its principal place of business in Nevada; Duracell Inc., a Delaware corporation with its principal place of business in Connecticut; and Eveready Battery Co. Inc., a Delaware corporation with its principal place of business in Ohio.  Id.  In denying Strategic Electronics's motion to dismiss, the court found, "It is undisputed that this is the type of patent interference case to which Section 146 would apply . . . ."  Id. at 1063.  "Because the adverse parties in this case all hail from different districts, the Court can exercise personal jurisdiction over all the parties . . . ."  Id.

As this is precisely the case here, where Plaintiff Bally and Defendants Ringo and Pearson all reside in different states, § 146 clearly applies.

B.  Due Process

While Plaintiff would have the Court end its analysis here, Ringo and Pearson respond that the "provision for 'nationwide service of process' in Section 291 must comport with the Due Process [Clause] of the Fifth Amendment," and attempt to distinguish prior cases in this circuit finding jurisdiction under § 146 on the grounds that those courts "did not consider the . . . constitutional issue raised by Defendants."  Reply at 2-3.  This argument does not yield them success.

Prior opinions of the D.C. Circuit make clear that, when this Court derives its personal jurisdiction over a defendant from a federal statute's nationwide-service-of-process provision, the Due Process Clause of the Fifth Amendment does not require that the defendant also have minimum contacts with this district. The D.C. Circuit directly addressed the due process question in <u>Briggs v. Goodwin</u>, 569 F.2d 1 (D.C. Cir. 1977), <u>rev'd on other grounds sub nom. Stafford v. Briggs</u>, 444 U.S. 527 (1980). <u>Briggs</u> involved allegations that four federal officials, one of whom resided in the District of Columbia, had violated plaintiffs' constitutional rights. <u>Id.</u> at 2-3. The other three defendants, all Florida residents, were served by certified mail in accordance with 28 U.S.C. § 1391(e), the statute authorizing suits against federal employees in their official capacities to be filed in any judicial district in which a defendant to the action resides, and providing for service by certified mail outside the jurisdiction where the action is brought. <u>Id.</u> at 3-4. The D.C. Circuit reversed the district court's grant of the Florida defendants' motion to dismiss for improper venue and insufficiency of service. Upholding § 1391(e)'s nationwide-service-of-process provision, the court wrote:

> Nor do we perceive any constitutional problem in the statute as applied to this case. Appellees pitch their constitutional argument on their supposed lack of minimum contacts with the District of Columbia, resting on cases holding "that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries." To the extent that this position presupposes that Congress' constitutional authority to provide for the sound operation of the federal judicial system is limited by the same constraints that apply to extraterritorial service by state tribunals, it builds on sandy soil indeed. Whether or not Article III mandated the creation of any inferior federal courts at all, it is a matter of general agreement that the discretion of Congress "as to the number, the character, (and) the territorial limits" of the inferior federal courts is not limited by the Constitution. Congress might have established only one such court, or a mere handful; in that event, nationwide service would have been a practical necessity clearly consonant with the

7

> Constitution. That it was considered expedient to establish federal judicial districts in harmony with state boundaries did not alter the scope of legislative discretion in this regard, and in fact Congress has, on occasion, provided for nationwide service. While several cases have asserted apodictically that service outside a federal judicial district is governed by the same sort of "fairness standard" as is extraterritorial service by state courts, this imputes a constitutional magic to lines that Congress can at any time redraw. As tradition alone works no such necromancy, we must reject appellees' constitutional argument as well.

Id. at 8-10 (internal quotations and citations omitted).

The D.C. Circuit reaffirmed its reasoning in 2004 in S.E.C. v. Bilzerian, 378 F.3d 1100 (D.C. Cir. 2004). In Bilzerian, a case ancillary to an SEC enforcement action in which a receiver had been appointed, the court denied the motion to dismiss for lack of personal jurisdiction filed by Haire, a debtor of the receivership estate. Id. at 1101. The court rejected "Haire's contention that, even if § 1692 authorizes the exercise of personal jurisdiction over him, to do so would violate the Due Process Clause because he lacks 'minimum contacts' with the District of Columbia." Id. at 1106 n.8 (quoting International Shoe Co. v. Washington, 326 U.S. 310 (1945)). The court found: "This circuit has held that the requirement of 'minimum contacts' with a forum state is inapplicable where the court exercises personal jurisdiction by virtue of a federal statute authorizing nationwide service of process. . . . In such circumstances, minimum contacts with the United States suffice." Id. (citing Briggs, 569 F.2d at 8-10; 4 WRIGHT & MILLER § 1068.1, at 605-06).

Several cases decided by other courts in this district – at times citing Briggs and at times not – have found that jurisdiction over a defendant served pursuant to a federal statute with a nationwide-service-of-process provision is proper as long as the defendant has minimum contacts with the United States as a whole. See, e.g., Combs v. Adkins & Adkins Coal Co., Inc., 597 F. Supp. 122, 125 (D.D.C. 1984) ("Where Congress has authorized nationwide service of

8

process, a federal court may exercise personal jurisdiction over any United States resident, without regard to whether its sister state court could assert jurisdiction under minimum contacts principles."); S.E.C. v. Lines Overseas Management, Ltd., No. 04-302, 2007 WL 581909, at *3 (D.D.C. Feb. 21, 2007) ("Specifically with respect to 15 U.S.C. § 78u(c), '[w]hen the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States. . . . Specific contacts with the district in which enforcement is sought . . . are unnecessary.'") (quoting In re Application to Enforce Admin. Subpoenas Duces Tecum of the S.E.C. v. Knowles, 87 F.3d 413, 417 (10th Cir. 1996)); Reese Brothers, Inc. v. U.S.P.S., 477 F. Supp. 2d 31, 39 (D.D.C. 2007) ("[A]bsent an explicit limitation to the applicability of the nationwide service of process provision, cases are legion concluding that a nationwide service of process provision confers national jurisdiction. . . . The court sees no reason to depart from these cases given the [Federal Debt Collection Procedures Act's] 'nationwide enforcement' provision. . . . Having so concluded, the court must determine whether the third-party defendant has sufficient minimum contacts with the United States so as not to violate 'traditional notions of fair play and substantial justice.'") (internal citations omitted); Flynn v. R. D. Masonry, Inc., 736 F. Supp. 2d 54, 60 (D.D.C. 2010) ("Because the defendants are all companies registered to do business in Florida, the RDM defendants have the 'national contacts' necessary to give rise to personal jurisdiction by virtue of ERISA's nationwide service of process provision.") (citing Flynn v. Ohio Bldg. Restoration, Inc., 260 F. Supp. 2d 156, 173 (D.D.C. 2003)).

In the face of this wealth of caselaw that supports Plaintiff, Defendants' authorities are readily distinguishable. For instance, Defendants erroneously cite I.A.M. Nat'l Pension Fund v.

9

Wakefield Industries, Inc., 699 F.2d 1254 (D.C. Cir. 1983), as evidence that the D.C. Circuit's "treatment of this issue has not always been consistent." Reply at 4. Quoting from I.A.M. Nat'l Pension Fund, Defendants write: "[T]he court suggested that contact with the forum must comply with due process considerations noting that for 'service of process on a corporation to be valid under Section 1132(e)(2) a corporation's contacts with the district of service must meet the *International Shoe* test.'" Reply at 4 (quoting 699 F.2d at 1257-58). The issue in that case, however, was critically distinct from the issue here. I.A.M. Nat'l Pension Fund, an ERISA case, was brought in the district in which the plan was administered, as authorized by 29 U.S.C. § 1132(e)(2). See 699 F.2d at 1256. There was "no dispute as to the propriety of venue in the District of Columbia." Id. at 1257. Rather, the question was whether service of Defendant Wakefield Industries and its President, Marvin Margolis, was proper in New York. Id. at 1256-58. In the present case, Defendants Ringo and Pearson do not contest that they are subject to service in Texas and Tennessee, respectively. I.A.M. Nat'l Pension Fund is thus of no assistance to them.

The cases Defendants cite in which courts in this district have interpreted nationwide-service-of-process provisions to require a showing of minimum contacts with the District of Columbia turned on the language of the statutes conferring jurisdiction – *e.g.*, the Clayton Act, 15 U.S.C. § 22, and the RICO statute, 18 U.S.C. § 1965 – not on a constitutional due process requirement. See, e.g., World Wide Minerals Ltd. v. Republic of Kazakhstahn, 116 F. Supp. 2d 98, 107-08 (D.D.C. 2000) (declining to apply national-minimum-contacts standard: "the Clayton Act required proper venue in order to satisfy jurisdictional requirements" and "the RICO statute does not allow this court to assert jurisdiction") (emphasis added) (citing GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000)); ASG Int'l Services S.A. v.

Newmont USA Ltd., 346 F. Supp. 2d 64, 87 (D.D.C. 2004) ("§ 1965 requires . . . that at least one defendant have minimum contacts with the District of Columbia") (emphasis added). These cases are thus inapposite here.

Finally, Defendants' citation to Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935 (11th Cir. 1997), and other cases suggesting the existence of a "split of authority among the circuits," Reply at 7, is irrelevant. The only circuit that matters for this Court is the D.C. Circuit, which has clearly addressed the issue. That other courts in this district may not have been aware of the clear authority of Briggs, Bilzerian, and their progeny, see Reese Brothers, 477 F. Supp. 2d at 37, does not diminish their force.

This Court, therefore, will apply a nationwide-minimum-contacts standard in the present case. Because Defendants Ringo and Pearson are indisputably residents of the United States, they are subject to personal jurisdiction in this district pursuant to 35 U.S.C. § 146 and in accordance with the Fifth Amendment's Due Process Clause.

Such an application of personal jurisdiction does not violate traditional notions of fair play and substantial justice. As recognized by the D.C. Circuit in Chris Laganas, 221 F.2d at 882-83, §§ 291 and 146 are narrowly crafted to provide plaintiffs access to judicial relief in patent infringement cases that could not be brought in any other jurisdiction. As Plaintiff correctly observes, "[I]f Ringo and Pearson had each assigned their interest to a single entity, such as a corporation or LLC, the multiple defendants would not be present, and jurisdiction where the single entity could be found would be appropriate." Opp. at 4 n.2; see Hayes, 279 F.2d at 818. Ringo and Pearson, therefore, were not without control over the jurisdiction in which this case might be brought. Finally, Plaintiff, who hails from even farther away than Defendants, gains no unfair advantage over them by bringing its suit here.

**IV.     Conclusion**

The Court, therefore, ORDERS that:

1.     Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is DENIED; and

2.     Defendants shall file their Answer by June 17, 2011.


**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 3, 2011